IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUWAN MATTHEWS,

                Plaintiff,

v.

CAPTAIN KEVIN PITZEN,
CORRECTIONAL OFFICER DEAN FABRY,
CORRECTIONAL OFFICER JOHNATHAN BOHNSACK,
and CORRECTIONAL OFFICER JAMEY P. KUSKE,[1]

                Defendants.

OPINION AND ORDER

Case No. 22-cv-0481-wmc

---

    Plaintiff Juwan Matthews, who is currently incarcerated at Jackson Correctional Institution and representing himself, claims that he was subjected to two unnecessary and humiliating strip searches while incarcerated at Columbia Correctional Institution ("CCI"). Matthews was granted leave to proceed on Fourth and Eighth Amendment claims against Correctional Officers Fabry, Bohnsack, and Kuske, and on Eighth Amendment claims against Captain Pitzen. (Dkt. #11.) Defendants have moved for summary judgment on all of Matthews' claims for failing to exhaust his administrative remedies before filing. For the following reasons, the court will grant defendants' motion and dismiss plaintiff's claims without prejudice.

UNDISPUTED FACTS

    Matthews alleges that defendants unlawfully searched him on two separate occasions: May 1 and June 28, 2019. On May 1, Officers Fabry and Bohnsack strip

---

[1] The court has amended the caption to reflect the proper spelling of defendant Jonathan Bohnsack's name as indicated on the acceptance of service. (Dkt. #13.)

searched Matthews in a staff restroom with Captain Pitzen observing, because Matthews and his cellmate were suspected of having a cell phone. Matthews was handcuffed behind his back throughout the search. While Officer Bohnsack held Matthews' right arm, Officer Fabry ripped off Matthews' clothing over his protests, then conducted a search. The officers found no cell phone. On June 28, Matthews maintains that he was again handcuffed behind his back and strip searched, this time by Officers Fabry and Kuske, with Captain Pitzen again present, although he offers no evidence of ever submitting an inmate complaint as to this second incident.

After the May 1 search, Matthews submitted a timely inmate complaint. (Dkt. #21 at 2.) The complaint form directs inmates to submit documentation of their attempts to informally resolve their claims before submitting a complaint. (Dkt. #21-3 at 11.) The inmate complaint examiner ("ICE") returned the complaint on May 17, 2019, because Matthews did not attempt to resolve his issue informally before filing a complaint. (Dkt. #21-2 at 1.) Accordingly, Matthews was directed to contact Security Director Gustke, and then resubmit the complaint. (*Id.*)

Matthews submitted a second complaint on May 27, 2019, noting that he had contacted Security Director Gustke as instructed and representing that he also followed up with Warden Novak. (*Id.* at 11.) The ICE acknowledged the second complaint the following day. (*Id.* at 1.) Under Wis. Admin Code § 310.10(9), the ICE "shall either reject the complaint or send a recommendation" within 30 days of receipt of the complaint. Having not received a decision on his complaint concerning the May 1 incident by August 13, 2019, some 77 days after that complaint was received, plaintiff sent an interview

2

request asking for a copy of the recommendation.  (Dkt. #24 at 2.)  The next day, a program assistant replied that a recommendation had not yet been made.  (*Id.*)

On August 23, 2019, the ICE finally recommended Matthews' second complaint be dismissed, as there was no record that he had actually written to the Security Director to attempt to resolve his issue.  (Dkt. #21-3 at 2.)  The warden dismissed the complaint on the same basis (*id.* at 4), and Matthews timely appealed to the Corrections Complaint Examiner's office (*id.* at 5).  On September 11, 2019, the Corrections Complaint Examiner ("CCE") recommended Matthews' appeal be dismissed due to his failure to follow the ICE's directives regarding the complaint resolution process, and the reviewing authority affirmed.  (*Id.* at 9.)

Although Matthews submitted to this court what he purports to be his follow up correspondence to Security Director Gustke and Warden Novak dated May 16, 2019 (dkt. ##25-2; 25-3), a day before the ICE instructed him to do so, there is no stamp of receipt and no response on either piece of correspondence, nor does he provide any response.  Matthews failed to submit proof of correspondence with Gustke or Novak to the ICE or as part of his administrative appeal before bringing this lawsuit.

OPINION

**I.  Exhaustion**

Under the Prison Litigation Reform Act ("PLRA"), prisoners may not bring a federal claim about events in prison "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Moreover, the prisoner must take each step in the

3

prison's administrative rules to exhaust remedies. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requires (1) following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all of the necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005). Finally, "[e]xhaustion is necessary even if … the prisoner believes that exhaustion is futile." *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006); *see also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement.").

The purpose of this exhaustion requirement is to afford prison administrators a fair opportunity to resolve a prisoner's grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Thus, a prisoner's failure to exhaust constitutes an affirmative defense, which defendant must prove. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018). At summary judgment, a defendant must specifically show that there is no genuine dispute of material fact as to the plaintiff's failure to exhaust and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

In Wisconsin, in order to exhaust administrative remedies, a prisoner must follow the Inmate Complaint Review System ("ICRS") process set forth in Wisconsin Administrative Code Chapter DOC 310, which begins with an inmate filing a grievance with the ICE within 14 days after the incident giving rise to the grievance. Wis. Admin Code § DOC 310.07(2). The ICE may return a complaint if it does not satisfy the criteria found in § 310.07(1), (3), (4), or (5). § DOC 310.10(5). This includes attempting to resolve the issue by following the designated process specific to the subject of the

complaint.  § DOC 310.07(1).  The ICE may also request inmates to provide evidence of having followed the specific process.  *Id.*  The ICE shall grant 10 days for receipt of the corrected complaint.  § DOC 310.10(5).

A prisoner may file an appeal to the corrections complaint examiner within 14 days of the date of the decision on the inmate complaint or, if the inmate does not receive a decision, 45 days after the date the ICE enters the complaint.  §§ DOC 310.09(1), 310.11(3).  The PLRA cannot be interpreted so narrowly to allow prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002), but this does not mean that prisoners may be absolved if he or she fails to follow the administrative rules for appeal by administrative delay.  Exhausting administrative remedies include following the rules for filing an appeal.  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2022).

When a prisoner has made an error in following the grievance procedure, the court must find the inmate has not sufficiently exhausted.  *Turley v. Rednour*, 729 F.3d 645, 650 at n.3 (7th Cir. 2013).  If the prisoner follows procedure but receives no response due to an error by the prison, however, the prisoner shall be deemed to have exhausted his administrative remedies.  *See, e.g., Turley*, 729 F.3d 645; *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006); *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005); *Lewis*, 300 F.3d 829.  With these exhaustion requirements in mind, the court will turn to whether plaintiff exhausted his administrative remedies as to either of his claims strip searches.

A. **June 28, 2019 Search**

The court will begin with the second search on June 28, 2019.  There is *no* record

that plaintiff filed a complaint for this second search, and plaintiff concedes that he did not exhaust administrative remedies for this search. (Dkt. #24 at 3.) Instead, plaintiff explains that he was "under the belief that it was still an ongoing-investigation and continuing misconduct due to the fact that a decision ha[d] not been rendered in the first complaint." (*Id.*) However, his prior complaint concerned a separate search, with some overlapping defendants and potentially different legal claims. Thus, he was required to file a new complaint regarding this second incident even though his complaint regarding the first search was still under consideration. *See* § DOC 310.07(5) (a complaint "may contain only one clearly identified issue"); *cf. Lewis*, 300 F.3d 829, 833-35 (7th Cir. 2002) (a prisoner's appeal was properly denied as untimely when he had received notice of denial of a claim yet failed to appeal that claim until his other claims had also been denied). Moreover, even if plaintiff *believed* exhaustion was unnecessary or would be futile, he was still required to exhaust, and he did not. Finally, even under plaintiff's theory, any claimed exhaustion still would depend on his exhausting his first complaint, and because he did not do so for the reasons explained below, the court must dismiss plaintiff's claims against defendants Fabry, Kuske, and Pitzen for the June 28 search.

   B. **May 1, 2019 Search**

Whether plaintiff exhausted his claims against defendants Fabry, Bohnsack, and Pitzen for the May 1, 2019, search turns on whether he preserved his claim after the ICE returned his initial complaint. To begin, the ICE returned plaintiff's May 15, 2019, complaint two days later, directing plaintiff to "follow the designated process specific to the subject of the complaint." (Dkt. #21-2.) Specifically, the step plaintiff missed was

contacting Security Director Gustke before filing a formal inmate complaint. (*Id.*) Plaintiff was "given one opportunity to correct and resubmit [the] returned complaint as allowed under DOC 310.10(5)," and he was warned that the resubmitted complaint may not be processed if he did not follow those instructions. (*Id*.)

Plaintiff then submitted a second complaint on May 27, 2019, regarding the same May 1 search, reporting that he wrote to Security Director Gustke as instructed and also to Warden Novak. (Dkt. #21-3 at 11.) However, the ICE "may request inmates to provide evidence of having followed the specified process." § DOC 310.07(1). Despite plaintiff's claim that he had tried to resolve his issue informally, the ICE recommended dismissing the second complaint on August 23, 2019, because there was *no* record to support that assertion. (Dkt. #21 at 3.) The ICE also expressly noted that the institution had no record of any correspondence from plaintiff to Gustke, *and* plaintiff had submitted *no* evidence of having written to Gustke as directed, and therefore concluded plaintiff was "not willing to participate in the resolution process." (Dkt. #21-3 at 2.) The warden similarly dismissed plaintiff's complaint on August 27, 2019. (Dkt. #21-3 at 4.)

Plaintiff timely appealed on two grounds. First, he argued that dismissal was inappropriate because of the delay in processing his complaint -- the ICE's recommendation having been issued well beyond the 30-day deadline from the date of receipt required by § DOC 310.10(9). Secondly, he also suggested that perhaps jail staff threw away his correspondence and noted that the ICE did not ask him for a carbon copy of his correspondence with Security Director Gutske before recommending dismissal. (Dkt. #21-3 at 15.)

7

As for the latter ground, the ICE did not request documentation before recommending dismissal, but the initial return letter does not expressly direct that plaintiff provide such documentation. (Dkt. #21-2.) Rather, the complaint form itself *directs the inmate* to "[s]end any documentation you have, that supports your attempt to resolve your claims." (Dkt. #21-3 at 11.) Although plaintiff has submitted to this court a copy of an interview request to the Security Director, as well as to Warden Novak dated May 16, 2019, neither request is stamped as received by the institution, nor was there any response. Regardless, having failed to submit either document to *the ICE* or in any other administrative appeal process in 2019, he cannot use them to show improper dismissal now. *Cf. Parker v. Almonte-Castro*, No. 21-cv-509-bbc, 2022 WL 2274875, at *4 (W.D. Wis. June 23, 2022) (complaint rejected for not following designated process in § 310.07(1) cannot satisfy exhaustion requirement).

As for plaintiff's lateness argument, plaintiff renews his contention that because the ICE took approximately 87 days to issue a recommendation in violation of administrative procedures, he should be deemed to have exhausted his administrative remedies by default. However, having acknowledged the delay, defendants explain that CCI was behind in responding to inmate complaints due to staffing issues. Beyond general caselaw requiring administrative agencies to follow their own promulgated rules, plaintiff has offered *no* authority that supports his position that a departure from a deadline should relieve plaintiff's obligation to exhaust altogether. To the contrary, the caselaw is adverse to plaintiff, since processing delays are not enough to preclude plaintiff a remedy or relieve him of the obligation to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (unless a

8

remedy is 'unavailable' to a prisoner, the PLRA does not limit an inmate's obligation to exhaust, regardless of any special circumstances); *cf. Crouch v. Brown*, 27 F.4th 1315, 1321-22 (7th Cir. 2022) (prison officials and staff may not take unfair advantage of the exhaustion requirement or make a remedy unavailable by failing to respond properly or through affirmative misconduct).

Regardless, plaintiff knew as a result of his information request about the status of his complaint, that it was still awaiting a recommendation *and* that he would be able to appeal. Nor does plaintiff explain why the processing delay should excuse his unrelated failure to provide documentation establishing that he had followed the ICE's directives. Therefore, plaintiff has not established a genuine dispute of material fact with respect to whether he exhausted his administrative remedies.

Accordingly, the court must grant defendants' motion for summary judgment for failure to exhaust, although the court will dismiss plaintiff's claims without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). This means that at least theoretically plaintiff can refile his claims if he can still successfully exhaust them. However, in fairness, he will likely find it impossible to file a proper grievance now because the relevant events happened too long ago.

'

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment for failure to exhaust administrative remedies is GRANTED.

2) Defendants' motion to stay (dkt. #29) is DENIED as moot.

3) This case is DISMISSED without prejudice. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 8th day of February, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge